IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY COBOS, ) | 1:08-cv-01438 GSA PC |
| ) | |
| Plaintiff, ) | ORDER RE PLAINTIFF'S MOTION |
| ) | FOR SUMMARY JUDGMENT AND |
| v. ) | DEFENDANTS' CROSS-MOTION |
| ) | FOR SUMMARY JUDGMENT |
| S. SURYADEVARA, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff is a state prisoner proceeding pro se in this civil rights action. The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).[1] Pending before the Court are Plaintiff's motion for summary judgment, and Defendants' cross-motion for summary judgment.

I.  **Procedural History**

This action proceeds on the November 6, 2009, first amended complaint. Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) at Avenal State Prison, brings this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff names as Defendants the following individuals employed by the CDCR at Avenal: Warden J. D Hartley; Chief Medical Officer (CMO) E. Greenman; CMO S. Suryadevara; Dr. M. Bopari. On February

---

[1] Plaintiff filed his consent to magistrate judge jurisdiction on October 3, 2008 (CEF No. 4) and Defendants filed their consent on October 25, 2010 (ECF No. 15).

11, 2010, an order was entered, finding that the first amended complaint stated a claim for relief against Defendants Greenman and Suryadevera on Plaintiff's claim of deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Defendants Hartley and Bopari were dismissed from this action based on Plaintiff's failure to state a claim upon which relief could be granted. Defendants answered the complaint. On December 14, 2011, Plaintiff filed a motion for summary judgment as to Defendant Suryadevera. Defendants filed opposition to the motion. On March 21, 2012, Plaintiff filed another motion for summary judgment. On April 9, 2012, Defendants filed opposition to Plaintiff's motion for summary judgment. In their opposition, Defendants argue that there is no triable issue of material fact, and that judgment should therefore be entered in their favor.[2]

## II.  Allegations

Plaintiff alleges that he has been diagnosed with "calcific granuloma" in his lower left lung and that he has had consistent throat pain that radiates to his left eye and upper lung. Plaintiff alleges that when he arrived at Avenal, he began having respiratory problems that were diagnosed as pneumonia and treated with antibiotics, an inhaler and a "pneumococcal vaccine." Plaintiff alleges that "medical doctors" at Avenal ordered an MRI in 2007, and opted for an ultrasound in 2008, but neither procedure has been performed. Plaintiff alleges that a throat culture was taken in 2009, but it was not properly processed and no diagnosis was made. Plaintiff asserts that he suffers from throat, mouth, tongue and ear pain, has intermittent dizziness, and has sustained ear damage that has caused some hearing loss.

Plaintiff claims that "his custodians have been deliberately indifferent to his pain and

---

[2] In resolving Defendants' motion for summary judgment, the Court will consider Plaintiff's exhibits submitted in support of Plaintiff's motion for summary judgment as evidence in opposition to Defendants' motion for summary judgment. Because the November 6, 2009, first amended complaint is signed under penalty of perjury, the Court will consider it as an affidavit in support of Plaintiff's motion for summary judgment and in opposition to Defendants' motion for summary judgment. A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief. McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam); Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); F.R.C.P. 56(c)(4).

suffering by not providing the very basic diagnostics to determine the source of his infection," even though those diagnostic tests have been ordered by medical staff, and have intentionally delayed providing medical treatment. Plaintiff alleges that he "has consistently complained to staff about his medical problems and has consistently notified medical . . . of his medical problems."

Plaintiff alleges that Defendant Greenman was aware of Plaintiff's medical condition because she oversees medical care at the prison. Plaintiff further alleges that Greenman assumed Plaintiff suffered from tonsilitis without examining Plaintiff, and did not prescribe any treatment. Plaintiff alleges that Defendant Sudyadevera was aware of Plaintiff's medical needs but did not provide any treatment.

**III.  Legal Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> [a]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e);

Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson, 477 U.S. at 248; Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Matsushita, 475 U.S. at 588; County of Tuolumne v. Sonora Community Hosp., 263 F.3d 1148, 1154 (9th Cir. 2001).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007).  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

**IV.      Plaintiff's Motion for Summary Judgment**

With regard to Plaintiff's motion for summary judgment, as the party with the burden of persuasion at trial, Plaintiff must establish "beyond controversy every essential element of its" his affirmative claims. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003) (quoting W. Schwarzer, California Practice Guide: Federal Civil Procedure Before Trial § 14:124-127 (2001)). The moving party's evidence is judged by the same standard of proof applicable at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

     **A.      Medical Care**

In order to prevail on a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, a plaintiff must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 111 S.Ct. 2321, 2323 (1991).

The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 112 S.Ct. 995, 998 (1992); Wilson, 111 S.Ct. at 2323. Deliberate indifference is present "when prison officials deny, delay or intentionally interfere with medical treatment," or it may be shown "by the way . . . prison physicians provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (cites omitted). While neither negligence nor medical malpractice is sufficient to violate the Eighth Amendment, a plaintiff is not required to show a complete failure to provide medical treatment. Rather, "deliberate indifference" may be shown by conduct amounting to a total failure to competently treat a serious medical condition, even if some treatment is prescribed. See, Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989).

In order to meet his burden, Plaintiff must come forward with evidence that establishes the lack of existence of a triable issue of fact. Plaintiff's evidence must establish, without

dispute, that defendants knew of and disregarded a serious risk to Plaintiff's health, resulting in injury to Plaintiff. Plaintiff supports his motion with his own declaration, along with Exhibits 1 to 23, copies of relevant portions of his medical record and central file. As noted, the Court will consider the November 6, 2006, first amended complaint as an affidavit in support of Plaintiff's motion.

In his declaration, the only reference Plaintiff makes to either of the Defendants is his statement that "in interdisciplinary notes E. Greenman, CMO, acknowledges Plaintiff's throat, ear, and tonsil conditions and the orders of MRI and Ultrasound." (Pltf.'s Decl. ¶ 11.) Plaintiff refers to his Exhibit 19. This exhibit is a copy of the Interdisciplinary Progress Notes from January 9, 2008, signed by Defendant Greenman. These notes indicate that although an MRI was ordered it was unsuccessful due to Plaintiff's claustrophobia. It was later determined that an MRI would not be medically useful. The notes also indicate a "consistently normal thyroid function," and that Plaintiff was being referred for further evaluation by a surgeon before a further assessment could undertaken. There is nothing in Plaintiff's declaration that establishes that either Defendant knew of and disregarded a serious risk to Plaintiff's health. The declaration establishes, at most, a disagreement with the course of treatment. Mere difference of opinion between a prisoner and prison medical staff as to appropriate medical care does not give rise to a section 1983 claim. Hatton v. Arpaio, 217 F.3d 845 (9th Cir. 2000); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

In his motion for summary judgment, Plaintiff argues, exhibit by exhibit, that Defendants were deliberately indifferent to his serious medical needs. The Court will analyze the exhibits in the order referred to by Plaintiff in his arguments.

Plaintiff refers to Exhibit 1, a copy of the Director's Level Appeal Decision of Plaintiff's inmate grievance, Log No. ASP 06-190. In this grievance, Plaintiff claims that he has not received treatment, and requested a consultation with an ear, nose and throat (ENT) specialist. The finding at the Director's Level indicated the following:

> Although the ENT appointment was delayed beyond the 14 days allotted for an urgent referral, the appellant was examined by an ENT specialist on December 5, 2006. The appellant was prescribed medications for 15 days and a follow-up appointment was scheduled. The delay in treatment was a violation of the Inmate Medical Services Program (IMSP), Specialty Services policy; however, all attempts are being made by health care staff to comply with the Plata v. Schwarzenegger Stipulated Agreement. If a delay in specialty services is foreseen, health care staff are advised to schedule the appellant with his primary care physician every 30 days until the specialty service is completed. The appellant's concerns are noted; however, further intervention at the Director's Level of Review is not warranted.

(Pltf.'s Exh. 1.)   This exhibit establishes, at most, that Plaintiff's ENT appointment was delayed and violated a state policy.   Mere delay in medical treatment does not constitute deliberate indifference. Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 407 (9th Cir. 1985). A plaintiff must show the delay caused him serious harm. But see McGuckin, supra at 1060 (plaintiff not required to show "substantial harm").  In addition, a prisoner must show defendant knew aid was required, had the ability to render that aid, yet "sat idly by." Id.  In other words, deliberate indifference is a function of the seriousness of prisoner plaintiff's medical needs and the wrongfulness of the defendant's actions in light of those needs. McGuckin, supra at 1061. Here, Plaintiff's evidence fails to establish that the delay in seeing an ENT specialist caused him injury.

Plaintiff refers to Exhibit 2 to establish that an urgent request for service for an ultrasound for his thyroid was submitted on December 27, 2007.  Plaintiff argues that no ultrasound was conducted. Exhibit 2 is a copy of the Director's Level Appeal Decision of his inmate grievance, Log No. ASP-07-03281. The decision indicates that on December 27, 2007, an urgent request for an ultrasound was submitted. On January 25, 2008, Plaintiff was evaluated by Dr. Henry, who indicated Plaintiff's thyroid antibodies were insignificant and his thyroid function was normal. On May 3, 2008, a CAT scan revealed Plaintiff's thyroid gland was not enlarged, nor were there enlarged nodules or lymph nodes detected. Dr. Henry indicated that a referral to an endocrinologist was not medically necessary.

7

1    Plaintiff's Exhibit 2 does not establish evidence of deliberate indifference on the part of
either of the named Defendants.  Exhibit 2 establishes, at most, a difference of opinion over the
course of treatment.  "[W]here a defendant has based his actions on a medical judgment that
either of two alternative courses of treatment would be medically acceptable under the
circumstances, plaintiff has failed to show deliberate indifference, as a matter of law."  Jackson
v. McIntosh, No. 94-16741 (9th Cir. Apr. 11, 1996), citing Estelle v. Gamble, 429 U.S. 97, 107-
08 (1976).  As Jackson continues, to "prevail under these principles, [a plaintiff] must show that
the course of treatment the doctors chose was medically unacceptable under the circumstances."
Id., citing Williams v. Vincent, 508 F.2d 541, 543-44 (2d Cir. 1974).   Plaintiff has failed to offer
any evidence in Exhibit 2 that meets this standard.

Plaintiff offers Exhibit 3 to support his argument that no MRI or ultrasound was
provided.  Exhibit 3 is a copy of the Director's Level Appeal Decision regarding Plaintiff's
inmate grievance, Log Nos. ASP-07-00846 and ASP-07-02561.  Plaintiff essentially argues the
same thing as in the prior grievances - that he is not getting the medical care that has been
ordered.  The response in this grievance, as in grievance no. ASP-07-03281, indicates that,
although the ultrasound and MRI was ordered in December of 2007, Plaintiff was evaluated by a
surgeon on January 25, 2008, and it was determined that "no further work-up was indicated as
the appellant's exam was completely normal."  Nothing in Exhibit 3 in Exhibit 2, establish that
Plaintiff's treatment was medically unacceptable under the circumstances.

Plaintiff offers Exhibit 4 in an attempt to establish that "licensed medical professionals"
requested certain diagnostic tests in 2008.  Plaintiff contends that there was no follow-up testing.
Exhibit 4 is a copy of the Director's Level Decision in inmate grievance no. ASP-01-01741,
requesting that the diagnostic orders of the primary care physician be followed.   Exhibit 4
establishes that Plaintiff received health care as determined medically necessary by the primary
care physician, including diagnostic testing and prescription medications.

Exhibits 5 and 6, Plaintiff's inmate grievance nos. ASP-01-09-12378 and ASP-01-10982,

8

indicate that Plaintiff requested medical staff to treat and cure his condition.  Exhibit 5 establishes that, at the Director's Level, it was found that Plaintiff received health care as determined medically necessary by the primary care physician, including diagnostic testing and prescription medications.  The decision further advised Plaintiff that "there is no compelling evidence that warrants intervention at the Office of Third Level Appeals-Health Care, as you are receiving the treatment deemed medically necessary, including medications, surgical intervention and specialty services."  Plaintiff was also advised that "only authorized health care staff shall be permitted, within the scope of their licensure, to diagnose illness or prescribe medication and health care treatment for patient-inmates.  No other personnel or inmates may do so."  Nothing in Exhibit 5 or Exhibit 6 establishes any conduct by any of the named Defendants.

   In Exhibits 7A through 7S, Plaintiff submits copies of documents from his medical file to establish that he has submitted health care requests.  A review of the exhibits does establish that Plaintiff, on multiple occasions, did request health care.  The issue in this lawsuit, however, is Defendants' conduct.  Nothing in Exhibits 7A through 7S indicates any conduct by either of the Defendants, or establishes that either of the Defendants was deliberately indifferent to a serious medical need of Plaintiff's.

   Plaintiff offers Exhibits 8 and 9 to establish that chest x-rays revealed that he had a "nodular density at the left base" and that "calcific granulomatous deposits are seen in the hilar region."  These exhibits indicate that the x-rays referred to by Plaintiff were taken in 1999 and 2000, and do not indicate any conduct by either of the Defendants, nor do the exhibits establish any evidence of deliberate indifference on the part of Defendants.  That an abnormality was found on a chest x-ray does not subject Defendants to liability for their conduct several years later.

   Plaintiff offers Exhibit 10 to establish that he was diagnosed with a chronic inflammation of the left tonsil.  Exhibit 10 indicates that Plaintiff was diagnosed by an outside physician with throat pain secondary to chronic tonsillitis and otalgia secondary to eustachian tube dysfunction.

9

Exhibit 10 does not, however, establish any evidence of deliberate indifference, or any conduct, on behalf of the Defendants.  Similarly, Exhibit 11 reveals that a CT scan of Plaintiff's neck was performed on May 3, 2007.   The scan results noted that Plaintiff had "a single enlarged 1.3 cm left internal jugular lymph node with multiple additional shotty nodes present bilaterally.  The remainder of the neck including the larynx are within normal limits.  No primary neoplasm is identified."   Nothing in either Exhibits establishes any conduct or deliberate indifference on the part of Defendants.

Exhibits 12, 13 and 14 are letters from the Prison Law Office to Deputy Attorney General Charles Antonen and to Plaintiff regarding his health care.  The letters were written in response to Plaintiff's complaints about his health care.  The letters establish that Plaintiff did have health care concerns and that Plaintiff felt that his needs were not being addressed.  Nothing in the letters, however, establishes deliberate indifference on the part of Defendants.

Exhibits 15A and 15B are copies of documents titled as Emergency Care Flow Sheets.  These documents reflect that Plaintiff was returned to the prison from an outside medical appointment.  These documents are dated April 11 and May 3, 2007, and direct Plaintiff to follow up with his yard primary care provider.  Neither of these exhibits indicates any conduct on behalf of the Defendants, or establishes that either of the Defendants were deliberately indifferent to a serious medical need of Plaintiff's.

Exhibits 16A through 16L and 17A through 17L are submitted to support Plaintiff's contention that "it is well established plaintiff suffers ear and throat pain."   Plaintiff offers these exhibits to support his argument that Defendants did indeed know of his medical condition.  Plaintiff may not hold Defendants liable simply because he suffered from a medical condition and his medical record reflected that condition.  In order to meet his burden on summary judgment, Plaintiff must come forward with evidence that Defendants knew of and disregarded a serious risk to Plaintiff's health.  Exhibits 16A through 16L and 17A through 17L  establish, at most, that Plaintiff suffered from ear and throat pain and that he requested medical care.  Nothing

in these exhibits suggests that either of the Defendants, knowing of a serious condition, denied Plaintiff care or refused to treat him.  Exhibits 18A and 18B similarly establish a medical concern, and fail to refer to either Defendant.

Exhibit 19B is a copy of interdisciplinary progress notes signed by Defendant Dr. Greenman.  The notes do indicate Plaintiff's health concerns - "probable chronic tonsillitis, eustachian tube dysfunction, continued neck pain . . ."  The notes also indicate that "a recently ordered thyroid ultrasound has been deferred and the MRI neck has been cancelled as the patient is being referred for evaluation by a surgeon before further assessment is undertaken."  As with Plaintiff's other medical exhibits, Plaintiff has only established that he had a medical condition.  He has not established that Dr. Greenman or Dr. Suryadevera were deliberately indifferent to his condition.  This exhibit indicates that Dr. Greenman decided to wait until after the surgical consultation before further evaluating Plaintiff.  This evidence defeats Plaintiff's claim that Dr. Greenman was deliberately indifferent to his serious medical needs.

Exhibits 20A through 20D are copies of laboratory results that do not refer in any way to conduct by either of the Defendants.  Plaintiff fails to offer any competent medical evidence that interprets these lab results in such a way as to establish evidence of deliberate indifference on the part of Defendants.   Exhibits 21 through 23 are Health Care Services Request Forms, establishing that Plaintiff has made his health care concerns known.  Plaintiff has not, however, come forward with any evidence of any conduct by Defendants.

The Court finds that Plaintiff has failed to meet his burden on summary judgment.  The crux of Plaintiff's argument is that he has clearly made known to prison officials his health concerns.  He has voluminous documentation supporting his contention that Defendants knew of his medical condition.  Plaintiff has not, however, come forward with evidence that Defendants acted with deliberate indifference to his medical condition.  That Plaintiff made prison officials in general aware of his condition does not subject Defendants to liability.  Further, Plaintiff's own evidence, in the form of his prison grievances, establish that his condition was addressed.

11

As noted above, Plaintiff may not prevail in a section 1983 action for inadequate medical care when only the course of treatment is in dispute. Plaintiff's Exhibit 19B encapsulates his core argument. In Plaintiff's view, Dr. Greenman's decision to defer further evaluation until after a surgical consultation constitutes deliberate indifference. Plaintiff is not a physician, and may not substitute his judgment for that of medical professionals. Plaintiff has failed to meet his burden, and his motion for summary judgment should therefore be denied.

## V.   Defendant's Motion

In order to meet their burden on summary judgment, Defendants must come forward with evidence establishing the lack of existence of a triable issue of fact - evidence that they were not deliberately indifferent to Plaintiff's serious medical needs, resulting in injury to Plaintiff. Defendants support their motion with the declaration of Defendant Ellen Greenman, M.D. Regarding the allegations in the complaint, Dr. Greenman declares as follows:

> From September 2007 through August 2010 I was the Chief Medical Officer (CMO) at Avenal State Prison (ASP). From November 2007 through February 2009 I also filled the Health Care Manager (HCM) position at ASP. From November 2007 through February 2009 I also filled the Health Care Manager (HCM) position at ASP. The CMO job duties included clinical oversight of all medical operations at the institution. The Health Care Manager duties included management of all administrative aspects of health care operations.
>
> Attached at Exhibit A is a true and correct copy of my resume that summarizes my experience, education, training, professional licenses and certifications.
>
> This declaration is based in part on my review of medical records and inmate appeal records for ASP inmate Tony Cobos ("Mr. Cobos").
>
> I did not directly or personally treat, diagnose, or provide medical care for Mr. Cobos. My involvement was limited to oversight and review of his care as part of the inmate appeal process and as part of the performance of my duties as HCM and CMO at ASP.
>
> The medical records, Unit Health Record ("UHR"), and inmate appeal records for Mr. Cobos show the following as a partial list of his medical care and treatment in the pertinent time period at issue in this case from December 2006 until October 2009:

12

(a)   December 6, 2006: evaluated by an Ear, Nose and Throat 9"ENT") specialist.

(b)   December 29, 2006: evaluated by a Primary Care Physician ("PCP") at which time medication was prescribed and a Request for Services ("RFS") was submitted requesting a follow-up ENT consultation.

(c)   January 10, 2007: evaluated by a Registered Nurse regarding his complaint of bleeding and throat pain. Mr. Cobos encouraged to increase his fluid intake and rescheduled for an appointment with a PCP.

(d)   January 19, 2007: evaluated by a PCP; discussed with PCP multiple medical concerns; multiple medications, health care appliances, chronos and referral were ordered.

(e)   February 6, 2007: evaluated by a PCP; discussed multiple medical concerns with the PCP; medication was ordered, including cough syrup.

(f)   February 8 and February 26, 2007: evaluated by a PCP regarding various other medical concerns.

(g)   April 4, 2007: evaluated by a PCP; indicated to the PCP that he was still experiencing throat pain, difficulty swallowing. Pain medication was prescribed and a follow-up appointment with the PCP was to be scheduled in approximately four weeks.

(h)   April 11, 2007: evaluated by the ENT specialist; ENT documented no abnormalities, but recommended a throat computed tomography or "CT" scan. The ENT recommended Mr. Cobos be evaluated by his current PCP at any time he experienced throat problems. Additionally, an RFS was submitted requesting a throat CT.

(i)   May 3, 2007: CT of Mr. Cobos' neck was obtained off site at Templeton Medical Center which revealed normal findings in the nasopharynx, oropharynx or hypopharynx, and the submandibular, parotid, and thyroid glands were all normal. Multiple lymph nodes all measuring less than 1 cm were identified in the submandibular, internal jugular, and posterior triangle regions, as well as a 1.3 cm left internal jugular lymph node. A mark was placed on the location where the patient reported a lump but no abnormalities were seen in this region on CT. The report also states that no

13

primary neoplasm was identified.

(j) May 29, 2007: evaluated by the PCP. The PCP noted that the results of the neck CT were not in the UHR. The PCP wrote an order requesting the CT results. The PCP also ordered a follow-up appointment scheduled.

(k) May 30, 2007: institutional staff telephoned the outside facility that administered the neck CT requesting the results. The outside facility indicated that the CT results could not be located. The report was subsequently found and is in the UHR (see May 3, 2007 entry above).

(l) June 21, 2007 and August 13, 2007: evaluated regarding another medical condition.

(m) September 4, October 14, October 19, October 27, November 21 and December 27, 2007: seen by the PCP regarding his throat/neck complaints.

(n) October 22, 2007: seen by PCP, lab results reviewed.

(o) January 9, 2008; MRI unsuccessful because Mr. Cobos refused because he was claustrophobic; later it was determined that MRI not medically useful for soft tissue issues.

(p) January 25, 2008: evaluated by a surgeon (Dr. Henry) regarding his possible thyroid nodule and his throat and neck complaints. Dr. Henry determined that no further work-up was indicated (including ultrasound) as Mr. Cobos' exam was completely normal, his thyroid gland was not enlarged and no thyroid nodule was identified; the thyroid antibody test abnormalities were insignificant findings as the thyroid function tests were completely normal; scheduled for follow-up with a surgeon.

(q) February 20, 2008: seen by PCP after complaining about a lump in his throat and he was informed that he had no abnormal findings in his oral cavity.

(r) March 11, 2008 and April 1, 2008: repeat examinations of neck and throat by surgeon; results normal; thyroid function normal, no further work-up indicated.

(s) March 23, 2008: seen by PCP.

14

| | | |
|---|---|---|
| (t) | April 4, 2008: seen by Registered Nurse. | |
| (u) | April 8, 2008: received additional diagnostic lab testing. | |
| (v) | April 11, 2008: follow-up ENT evaluation. | |
| (w) | April 23, 2008: seen by PCP. | |
| (x) | April 29, 2008: MAR Committee denied MRI as not medically indicated or helpful because it would not help assess soft tissue matters. | |
| (y) | May 23, 2008: seen by PCP. | |
| (z) | June 2008: examined by physician; two visits by ENT, surgeon. | |
| (aa) | June 2, 2008: seen by PCP. | |
| (bb) | June 17, 2008: seen by ENT; examination results normal. | |
| (cc) | July 2, 2008: seen by PCP. | |
| (dd) | July 24, 2008: seen by Registered Nurse. | |
| (ee) | July 30, 2008: seen by PCP. | |
| (ff) | August 29, 2008: seen by PCP. | |
| (gg) | September 3, 2008: cervical spine x-rays. | |
| (hh) | October 20, 2008: seen by PCP. | |
| (ii) | November 24, 2008: seen by PCP. | |
| (jj) | December 8, 2008: cardiology consultation; stress echocardiogram (heart examination); results normal. | |
| (kk) | July 21, 2009: Diagnostic Upper GI (Gastrointestine) series testing; results normal. | |
| (ll) | August 4, 2009: PCP evaluated for heartburn (GERD); upper GI testing negative. | |
| (mm) | September 15, 2009: PCP evaluations; normal findings reviewed. | |
| (nn) | October 6, 2009: Pharmacy profile included active |

medication orders for Omeprazole, Loratadine and a Ventolin inhaler.

Additional testing and evaluation included at various times for gastroesophogeal reflux disease (GERD), asthma, chronic sinusitis, blood testing for H. Pylori which can cause stomach ulcer and inflammation, stress echocardiogram (heart examination). All of these diagnostic tests had negative findings. As shown in his medical records, Mr. Cobos also received extensive specialty consultation, including cardiology, ENT, radiology and general surgery evaluations.

I was involved in Mr. Cobos' inmate appeals in which he alleged deliberate indifference to his medical needs. I was the decision maker for the Second Level Appeal Responses.

Attached at Exhibit B is a true and correct copy of my March 21, 2008, Second Level Appeal Response (Log No. ASP-M-07-00846) to Mr. Cobos' inmate appeal. My decision stated in part:

> Your request for a follow-up ENT evaluation is granted, in that, you received the follow-up ENT evaluation on April 11, 2007.
>
> Your request that medical staff determine the cause of throat bleeding and pain is partially granted, in that, you have and will continue to receive treatment at this institution.
>
> DECISION: The appeal is Partially Granted, in that, you have received follow-up ENT evaluation, and you have and continue to receive treatment at Avenal State Prison.

Attached at Exhibit C is a true and correct copy of my December 16, 2008 Second Level Appeal Response (Log No. ASP-M-08-01741) to another of Mr. Cobos' inmate appeals. One of my conclusions in my findings was: "No evidence of deficiencies in your care have been identified, your medical care has been appropriate." My decision stated in part'

> DECISION: PARTIALLY GRANTED
> There is no evidence of deliberate indifference by medical staff. Deliberate indifference infers that the inmate/patient was provided with no treatment at all. The documentation in your UHR (unit health record) completely contradicts this allegation. Per Title 15 [California Code of Regulations, Title 15, Section 3350 inmate Medical Services Policies and Proceedings] an inmate may not demand a particular medication, diagnostic study and or course of treatment. Only licensed medical professionals can make these decisions for the inmate population.

16

> Monetary compensation is beyond the scope of the medical appeals process. Your request that those responsible be held accountable is also beyond the scope of the medical appeals process.
>
> I did not fail to respond to any known medical needs of Mr. Cobos.
>
> I was never deliberately indifferent to any of Mr. Cobos' medical needs.
>
> Based on my review of the medical records, the medical care and treatment of Mr. Cobos was appropriate and medically sound.
>
> I was not aware of any substantial risk of serious harm and was not aware of any specific risk of serious harm to Mr. Cobos that was ignored or not evaluated or addressed.
>
> Based on my education, training, background and experience, I am familiar with the standard of care for physicians within the California Department of Corrections and Rehabilitation in treating the types of complaints made by Mr. Cobos.
>
> Based on my education, training, background and experience, it is my opinion that the treatment of Mr. Cobos was consistent with the standard of care.
>
> At all times my involvement in the review of Mr. Cobos' medical care and treatment, I was acting within the scope of my official duties.
>
> Defendant S. Suryadevera, M.D. was the former Chief Medical Officer at CSP-Avenal and he has not been assigned to CSP-Avenal since at least 2006. He was not involved in any medical care for Mr. Cobos since at least that time. The CMO job duties included oversight of all medical operations at the institution.
>
> Based on my review of the medical records and information, there was no evidence that Dr. Suryadevera failed to respond or was deliberately indifferent to any of Mr. Cobos' medical needs.
>
> At all times in his dealings, if any, with Mr. Cobos, I believe Dr. Suryadevera was acting within the scope of his official duties.

(Greenman Decl. ¶¶ 3-21.)

The Court finds that Defendants have met their burden on summary judgment. Defendants have come forward with evidence that Plaintiff's health condition was treated, and that neither of the Defendants were deliberately indifferent to Plaintiff's condition. Dr.

Greenman's declaration establishes that between December 6, 2006, and September 15, 2009, Plaintiff was seen approximately 41 times by a medical professional for either an evaluation or a diagnostic procedure. Dr. Greenman's declaration establishes that Plaintiff was referred to outside specialists. Specifically, Plaintiff was evaluated by an ENT specialist and a surgeon. Further, Dr. Goodman's declaration establishes that Dr. Suryadevera was not involved in any medical care for Plaintiff since "at least 2006." Dr. Greenman's declaration establishes that, based on her professional medical opinion, Plaintiff's treatment was within the standard of care.

The burden shifts to Plaintiff to come forward with evidence that establishes a triable issue of fact - evidence that either Dr. Greenman or Dr. Suryadevera was deliberately indifferent to a serious medical need of Plaintiff's. As noted, the Court will treat Plaintiff's first amended complaint and all pleadings filed in support of his motion for summary judgment as an opposition to Defendants' motion. As reviewed above, the Court finds that Plaintiff has failed to come forward with any evidence of deliberate indifference. The gravamen of Plaintiff's complaint is that medical officials were not treating his condition in the manner that Plaintiff believed to be appropriate. Plaintiff's subjective belief that his medical care constituted deliberate indifference is unsupported by any objective evidence. Plaintiff is clearly unhappy with the course of his treatment, but the evidence clearly establishes that Plaintiff was treated. Further, the evidence establishes that the named Defendants had little or no direct involvement with Plaintiff's care. Plaintiff appears to be attempting to hold them liable based upon the fact that his medical record is replete with requests for health care and that his health concerns are noted in his medical record.

Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior. Ashcroft v. Iqbal, 556 U.S. 662, 673 (2009). Since a government official cannot be held liable under a theory of vicarious liability for section 1983 actions, Plaintiff must plead that the official has violated the Constitution through his own individual actions. Id. at 673. In other words, to state a claim for relief under section 1983, Plaintiff must

link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights. Plaintiff has not offered any evidence suggesting personal participation by any of the named defendants in any conduct that could be construed as deliberate indifference.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied.
2. Defendants' motion for summary judgment is granted in favor of Defendants and against Plaintiff.
3. The Clerk is directed to close this case.


IT IS SO ORDERED.

Dated: **March 27, 2013**         **/s/ Gary S. Austin**
                                 UNITED STATES MAGISTRATE JUDGE

19